UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KRISTOPHER F.[1]             Case No. 2:24-cv-3772

    Plaintiff,             Morrison, J.
                                           Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Kristopher F. filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). For the reasons explained below, the ALJ's finding of non-disability should be AFFIRMED.

**I. Summary of Administrative Record**

On January 25, 2023, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging that he became disabled beginning October 1, 2021 due to depression, thoracic spine pain, psoriasis, radiculopathy, gastroesophageal reflux disease, hearing loss, cervicalgia, joint bone spurs, tinnitus, and intervertebral disease. (R. 67.) After his application for benefits was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). At a telephonic hearing held on November 16, 2023, Plaintiff appeared with counsel and gave testimony before ALJ Ahavaha Pyrtel; a vocational expert also testified. (R. 15-56). On March 6,

---

[1] Due to significant privacy concerns in social security cases, the Court refers to claimants only by their first names and last initials. *See* General Order 22-01.

1

2024, the ALJ issued an adverse written decision. (R. 60-72). The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner. Plaintiff then filed this judicial appeal.

Plaintiff has a high school education and past relevant work as a computer support specialist, a composite job comprised of a brewer worker and brewery pumper, and a maintenance mechanic. (R. 70.) He was 46 years old on the date of his alleged onset of disability, which is considered a "younger individual," and remained in the same age category through the date of the ALJ's decision. He lives with his wife and his toddler-aged daughter. (R. 644.) Based on his work history, he meets insured status requirements for DIB through June 30, 2026. (R. 62.)

The ALJ determined that Plaintiff has the following severe impairments: "degenerative disc disease of the cervical and lumbar spine; degenerative joint disease of the right shoulder." (R. 63.) The ALJ also found the following non-severe physical impairments: dermatitis, a COVID infection, gastroesophageal reflux disease, tinnitus, hypertension, and hyperlipidemia. (R. 63.) Finally the ALJ found nonsevere mental impairments of personality disorder, depressive disorder, anxiety disorder, and cannabis dependence. (*Id.*) The ALJ concluded that none of Plaintiff's impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (R. 66.)

The ALJ further determined that Plaintiff retains the residual functional capacity ("RFC") to perform a range of light work, subject to additional non-exertional limitations:

> [Plaintiff] can never reach overhead with the right upper extremities. He can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs but can never climb ladders, ropes, or scaffolds. He can never work at unprotected heights or with moving mechanical parts. He can have occasional exposure to extreme temperatures, vibration, humidity, wetness,

>and pulmonary irritants. He can have exposure up to moderate noise levels and can perform simple, routine tasks.

(R. 66.)

Based upon the RFC as determined, the ALJ held that Plaintiff could no longer perform any of his past relevant work. (R. 70.) However, the ALJ determined based on vocational expert testimony that Plaintiff could still perform a substantial number of unskilled jobs existing in the national economy, including the representative positions of garment sorter, sales attendant and cashier. (R. 71.) Therefore, Plaintiff was not under a disability. (*Id.*)

In this judicial appeal, Plaintiff asserts that the ALJ erred by discounting Plaintiff's subjective complaints, and by finding unpersuasive the opinion of an examining consultant that he could not perform even sedentary work.

**II. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v.*

3

*Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted); s*ee also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 642-643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must

4

present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### III. Analysis

#### A. The Assessment of Subjective Complaints is Substantially Supported

In his assertion of error, Plaintiff argues that the ALJ "inadequately evaluated [Plaintiff's] subjective complaints of pain." (Doc. 8, PageID 1271.) Plaintiff maintains that the ALJ failed to adequately explain how the evidence was inconsistent with Plaintiff's subjective complaints that his pain level disables him from the ability to perform all work.

In this case, the ALJ partially discounted Plaintiff's subjective complaints. (*See* R. 67, concluding that "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.") An ALJ's analysis of subjective symptoms is generally given great deference. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). In fact, a credibility/consistency determination[2] cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are inconsistencies and contradictions among the medical records, his testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004). Here, the undersigned finds the ALJ's analysis

---

[2]SSR 16-3p clarified that in the evaluation of subjective symptoms, the focus is not on the claimant's propensity for truthfulness or character ("credibility"), but rather on the consistency of his or her statements about the intensity, persistence, and limiting effects of symptoms with the relevant evidence. However, SSR 16-3p did not alter established case law that used the phrase "credibility determination." For that reason, this Court uses the hybrid phrase "credibility/consistency" determination.

of Plaintiff's subjective complaints to be substantially supported based on the ALJ's reasonable evaluation and articulation of numerous inconsistencies in the record.

The ALJ began her analysis by summarizing Plaintiff's allegations that he was disabled both by "severe" mental health symptoms and by multiple physical impairments. As stated, the ALJ ultimately determined that many of those impairments, including Plaintiff's depression and anxiety, were not severe. That unchallenged assessment constitutes the first significant inconsistency between Plaintiff's testimony and the record.

But the ALJ identified many other inconsistencies. The ALJ began by carefully reviewing Plaintiff's subjective complaints:

> In a function report, the claimant reported being unable to sit for extended periods, difficulty performing repetitive or overhead tasks, and alleged that he has chronic pain (Exhibit 3E). He alleged difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, using his hands, and climbing stairs (*Id.*). The claimant also alleged difficulty understanding, completing tasks, concentrating, getting along with others, and managing stressors (*Id.*). At the hearing, the claimant testified that he is incapacitated by pain every evening and by depression or anxiety once or twice a week (Hearing Testimony). He testified that he could sit for up to thirty minutes at a time, has no problems with standing or walking, he has chronic right arm pain and neck pain, and he can lift up to thirty pounds (*Id.*). He testified he cannot reach overhead but has no problems reaching in front (*Id.*).

(R. 67; R. 228.)

The ALJ discussed imaging studies and clinical records that supported her findings of severe impairments in Plaintiff's shoulder, neck and lower back, but explained why that evidence did not support the degree of limitation that Plaintiff alleged. For example, the ALJ considered a June 2021 shoulder x-ray that "revealed a low-grade tear of the supraspinatus tendon as well as mild tendinosis, mild tenosynovitis, and mild bursitis" combined with clinical records that showed he "reported having right shoulder pain with difficulty raising his arm above ninety degrees." (R. 67.) However, the ALJ pointed out that Plaintiff did not receive *any* treatment for his shoulder condition until January 2023,

6

when he first established care with a physician who referred him to physical therapy. And when he finally attended physical therapy ("PT") for a few months, Plaintiff "reported significant improvement in his shoulder pain and …was discharged … after he had met all of his physical therapy goals." (R. 68.) "He was even able to perform two unassisted pull ups" – a feat that obviously requires overhead reaching – "demonstrating significant improvement from where he started." (R. 68, citing R. 1171.)

Similarly, while a cervical MRI from September 2021 supported some degree of neck pain due to moderate to severe spinal canal stenosis at C5-6, Plaintiff's only treatment for neck pain (other than acupuncture that he scheduled in late 2023) was five PT sessions in early 2022. As with PT for his shoulder, Plaintiff reported significant improvement after the brief PT treatment for his neck. (R. 68.) Last, with respect to his complaints of lower back pain, the ALJ took note of a June 2021 lumbar x-ray that revealed mild to moderate degenerative changes at L5-S1, and a subsequent April 2023 x-ray that showed moderate to severe disc disease at L5-S1 with mild disc space narrowing at other levels. Again however, the ALJ pointed out that Plaintiff had not sought *any* treatment at all for his lower back pain but for the ten acupuncture sessions that he scheduled in late 2023. (R. 68.) "[i]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints… we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p, 2017 WL 5180304, at *9

The ALJ did not ignore but explicitly evaluated the evidence that supported Plaintiff's subjective complaints – much of which was contained in Dr. Romero's April 2023 consultative report where he found a reduced range of motion in Plaintiff's shoulders, neck and spine. (R. 651.) And the ALJ considered the fact that in addition to

7

brief and intermittent periods of physical therapy for his shoulders and neck, Plaintiff underwent ten acupuncture appointments in late 2023 in order to address continuing pain complaints. (*Id.*) But the ALJ reasonably determined that on the whole, Plaintiff's imaging studies, level of largely conservative and intermittent treatment, and relatively active daily activities were inconsistent with the levels of *disabling* pain that Plaintiff alleged. Pursuant to SSR 16-3p, all of the factors cited by the ALJ were appropriate to consider in evaluating the consistency of Plaintiff's subjective reports with the record. *See id.*, 2017 WL 5180304, at *7-8.

The ALJ took note of multiple specific inconsistencies. For example, Plaintiff reported difficulty with standing and walking on his function report as well as unremitting chronic pain that began many years ago but recently prevented him from working. In discounting those complaints, the ALJ reasoned:

> On numerous occasions throughout the period at issue, the claimant regularly reported running and hiking as a hobby, including running up to four miles at a moderate pace..... This activity level, in addition to the claimant's minimal treatment for lower back pain, suggests the intensity, persistence, and limiting effects of his back impairment are not fully consistent with the record.
>
> Furthermore, the claimant reported experiencing chronic pain. However, the claimant did not seek any specific treatment for pain outside of intermittent physical therapy, ten acupuncture appointments, and the use of cannabis. Were the claimant's experience of pain as severe and limiting as alleged, one would expect greater attempts at treatment to manage such symptoms.
>
> Finally, the claimant told providers he stopped working due to his family's decision that he should be a stay-at-home parent as his wife's income was higher than his own.... He expressed being pleased with this decision and noted he could do remodeling contracting jobs if he had future financial stress (*Id.*). Similarly, the claimant reported having pain since he was in his 20s (Exhibits 6F, page 2) and he appears to have been able to work at the substantial gainful level at medium and heavy exertional levels for many years despite such pain (Exhibit 8D; Hearing Testimony). The claimant's reasoning for leaving his past job and his ability to work medium and heavy exertional jobs despite such pain suggests the alleged intensity and limiting effects of his symptoms are not entirely consistent with the record.

8

(R. 68-69; see also R. 496 (therapy note dated 10/22/21 stating "he and his wife decided he will quit his job and provide most of the caregiving to their daughter (though he shared they have also hired a babysitter to give him some time off.")

**B. The Assessment of Dr. Romero's Opinions is Substantially Supported**

Plaintiff also asserts error in the ALJ's negative evaluation of the opinions of an examining consulting physician, Ricardo Romero, M.D. In agreement with Plaintiff, Dr. Romero opined that Plaintiff suffers from disabling levels of pain that preclude even sedentary work. (R. 649-651.) Two non-examining consultants reviewed Dr. Romero's opinions but disagreed, concluding that Plaintiff could perform work at the light exertional level with few postural limitations. The ALJ rejected Dr. Romero's opinions as "unpersuasive" while adopting most of the non-examining consultants' RFC opinions as "generally persuasive."[3] (R. 69-70.) Plaintiff complains that the ALJ's failure to fully credit his subjective complaints contributed to the ALJ's improper analysis of Dr. Romero's opinions. Again, I find no error.

Current regulations require an ALJ to consider multiple factors when evaluating the persuasiveness of each administrative finding or medical source opinion, with a specific requirement that mandates articulation of how an ALJ considered the "supportability" and "consistency" factors. See 20 C.F.R. § 404.51520c. A discussion of supportability focuses on the provider's explanations for his or her opinions, including whether the opinions are supported by relevant objective medical evidence (such as lab

---

[3]Despite adopting the non-examining consultants' opinions as "generally persuasive," the ALJ added more specific manipulative and postural restrictions "to better reflect the claimant's conservative shoulder and neck treatment," including a limitation that precludes him from all right-sided overhead reaching. (R. 70.) None of the representative positions to which the VE testified appear to require overhead reaching.

9

results or imaging studies) or other supporting explanations such as clinical observations. 20 C.F.R. § 416.920c(c)(1). Consistency is defined as the extent to which an opinion or finding is consistent with evidence from other medical or nonmedical sources. 20 C.F.R. § 416.920c(c)(2).

Dr. Romero examined Plaintiff on April 6, 2023. Despite Plaintiff's asserted pain levels, Dr. Romero noted that Plaintiff "appears in no apparent distress," with some decreased range of motion to flexion in his neck, but more decreased range of motion in his neck to extension and to right lateral deviation. (R. 650.) Dr. Romero further found that Plaintiff's back was "*nontender* to thoracic and lumbar spines" with "*90% of normal flexion*," and "*complete normal range of motion*" for his "hands, wrists, arms, hips, legs, ankles, feet and knees." (R. 651, emphasis added.) Dr. Romero found "[n]ormal strength" overall despite a "decreased range of motion by 50%" in his bilateral shoulders, and an inability to elevate his arms "above the left of the shoulders." (*Id.*) But Dr. Romero also found positive straight leg raises, and a gait that included a limp. (*Id.*) Still, he repeated his finding of a "completely normal" range of motion and a grasp that was "very strong at 5 on the left and 5 on the right." (*Id.*)

Dr. Romero opined that Plaintiff would be limited to "less than sedentary work" due to his reported "chronic pain issues" and "limitations in sitting and standing." (Tr. 651.) He further opined that it "would be almost impossible" for Plaintiff to work in any capacity "because of his constant pain," which is "often overlayed by his severe mental health conditions." (*Id.*) Dr. Romero concluded that "[t]here would be no way that I believe that this gentleman could work 40 hours a week, even in a sedentary level." (*Id.*)

In contrast to the opinions of the non-examining consultants whose opinions the ALJ adopted with few changes, the ALJ rejected Dr. Romero's work-preclusive opinions

10

as "unpersuasive." (R. 69.) The ALJ evaluated "supportability" and explained that she found the opinions to be "not well supported" by Dr. Romero's own examination findings, which were inconsistent with the degree of limitation that he endorsed. And the ALJ found Dr. Romero's opinions to be "inconsistent" with other evidence of record.

> This opinion is unpersuasive. The opinion is not well supported. As mentioned above, Dr. Romero provided inconsistent ratings of the claimant's strength, rendering the evaluative nature of the examination less compelling. Furthermore, Dr. Romero did not provide any significant explanation for his opinion, instead relying in large part of the claimant's subjective reports of pain. Dr. Romero's opinion is also not consistent with the record. The claimant demonstrated an abnormal gait during the consultative examination, but he typically had a normal gait on other exams (e.g., Exhibits 1F, page 290; 5F, pages 254, 442). The claimant also had extremely conservative treatment for his lower back pain, he reported being able to run up to four miles at a moderate pace, and he has no other impairments that would affect to limit the claimant's ability to stand or sit. The claimant's other impairments, including his neck pain and right shoulder pain, responded favorably to conservative physical therapy treatment. Overall, Dr. Romero's opinion is not supported by his examination findings nor is it consistent with the record as a whole.

(R. 69.)

Plaintiff complains that the ALJ erred in evaluating supportability because "Dr. Romero clearly did not rely solely on Plaintiff's subjective complaints of pain," but also cited to imaging results and his own examination findings. (Doc. 8, PageID 1271.) But the ALJ did not discredit Dr. Romero for relying "solely" on Plaintiff's subjective complaints; rather, the ALJ explained why the imaging results and inconsistent examination findings, in combination with reliance "in large part" on subjective reports of pain, did not support Dr. Romero's opinions.

"[T]he regulations that require ALJs to explain their analysis of the supportability and consistency factors do not require those explanations to contain a specific level of detail," and allow for "the appropriate level of articulation …[to] depend on the unique circumstances of each claim." See *Chad T. v. Comm'r of Soc. Sec. Admin.*, Case No.

11

3:21-cv-00052, 2022 WL 4355001 at *8 (S.D. Ohio Sept. 20, 2022) (quoting Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5854 (Jan. 18, 2017)). Here, the ALJ's articulated analysis of Dr. Romero's opinions contains sufficient detail and is substantially supported. *See*, *generally*, *Warner v. Comm'r*, 375 F. 3d 387, 391 (6th Cir. 2004) ("Dr. Sonke's conclusion regarding the amount of weight that Warner could lift regularly appears to be based not upon his own medical conclusion, but upon… Warner's own assessment of his weight lifting limitations.")

### III. Conclusion and Order

Because the Defendant's decision is supported by substantial evidence in the record as a whole, **IT IS RECOMMENDED THAT** the Defendant's decision be **AFFIRMED** and that the above-captioned case be **CLOSED.**

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Chief Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

KRISTOPHER F.[4]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 2:24-cv-3772

Morrison, J.
Bowman, M.J.

**NOTICE**

Under Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[4] Due to significant privacy concerns in social security cases, the Court refers to claimants only by their first names and last initials. *See* General Order 22-01.

13